KYNERD v. SECURITY NAT. BANK et al. (No. 8005.)

(Court of Civil Appeals of Texas. Dallas. Nov. 2, 1918. Rehearing Denied Dec. 14, 1918.)

1. PRINCIPAL AND SURETY &#9758;182 — DISCHARGE OF NOTE—PAYMENT BY SURETY.

Where, when note became due, surety thereon for a valuable and adequate consideration purchased it and collateral note from payee, *held*, note was discharged so that right, if any, which surety or payee had thereafter against makers, would be on an implied promise to pay, although surety on the day that he purchased notes obtained a loan from payee and delivered notes to it as security.

2. PLEADING &#9758;252(1) — AMENDMENT — CONTRADICTORY ALLEGATIONS.

Allegations of trial amendment contradictory of and repugnant to distinctly alleged fact in amended petition of which trial amendment was a part is ineffectual.

3. COURTS &#9758;121(1)—DISTRICT COURT—JURISDICTION—AMOUNT.

Where plaintiff surety had lost his interest in note sued on by its payment, and amount of interest alleged to have been paid by him to secure its extension was less than $500, district court had no jurisdiction to render judgment for him.

Error from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by the Security National Bank and another against W. D. Kynerd and others. Judgment for plaintiffs, motion of defendant named for new trial overruled, and he brings error. Reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, for plaintiff in error.

Leake & Henry, Cecil L. Simpson, and Monta R. Ferguson, all of Dallas, for defendants in error.

TALBOT, J. The Security National Bank of Dallas, Tex., a corporation created under the laws of the United States, and H. W. Ferguson, as plaintiffs, instituted this suit against W. D. Kynerd, the plaintiff in error, and others, to recover on a note of $12,500, bearing interest at the rate of 10 per cent. per annum, and providing for the payment of 10 per cent. of the principal and interest of said note as attorney's fees if the same was placed in the hands of an attorney for collection. The plaintiffs also sought a foreclosure on a certain note for $16,000 charged to have been pledged as collateral security for the payment of the note sued on. The plaintiff H. W. Ferguson separately prayed judgment for $436.90, on account of alleged payments of matured interest on the notes mentioned above.

Plaintiffs alleged in their second amended petition, filed January 11, 1917, in substance, that on the 3d day of December, 1915, defendants J. P. Smith and W. D. Kynerd executed and delivered their certain promissory note for the principal sum of $12,500, payable to the order of plaintiff Security National Bank 60 days after its date; that said note bore interest from maturity at the rate of 10 per cent. per annum until paid, and provided for 10 per cent. additional on the principal and interest unpaid, for

attorney's fees, if said note was placed in the hands of an attorney for collection; that said note was payable at the office of the Security National Bank and indorsed on the back thereof by plaintiff H. W. Ferguson; that said note was secured by a note for $16,000 pledged as collateral security executed by J. J. Marshall on March 18, 1915, payable to the order of J. P. Smith, which collateral note was, in turn, secured by a vendor's lien against a tract of 90.4 acres of land, a part of the Thomas Lagow league in Dallas county; that on or about February 15, 1916, the said $12,500 note became due and payable, and, not being paid, was by the consent of plaintiff Security National Bank renewed and extended by the defendants J. P. Smith and W. D. Kynerd executing their certain note for $12,500 in renewal thereof, indorsed by the plaintiff H. W. Ferguson, payable to plaintiff Security National Bank four months after its date, bearing the same rate of interest and providing for attorney's fees as did the original $12,500 note, and was likewise secured by the said $16,000 vendor's lien note; that the plaintiff H. W. Ferguson, in indorsing said original and renewal notes of $12,500, did so with the express and implied understanding between him and the makers of said notes, J. P. Smith and W. D. Kynerd, that he, the said Ferguson, was not to become responsible on said notes jointly and severally with them as makers of said notes, but that his liability was only secondary; that when said original note became due on or about February 15, 1916, it became necessary, in order to secure an extension and renewal thereof, to pay the interest thereon in advance, and plaintiff Ferguson paid on said interest for the benefit of defendants the sum of $167.50; that a prior and superior lien existed against the aforesaid tract of 90.4 acres of land to the lien securing the said $16,000 vendor's lien collateral note, to secure a note for $13,470.72, executed by the Western Lumber & Creosoting Company, and payable to Four States Life Insurance Company of Texarkana, Ark., which note bore interest from date at 8 per cent. per annum, payable semiannually; that an interest payment thereon fell due on March 13, 1916, and, in order to protect the said collateral note for $16,000, plaintiff Ferguson was compelled to contribute and did pay on said interest for the benefit of defendants the sum of $269.40.

It is further alleged in said amended petition: That on or about June 17, 1916, for a valuable and adequate consideration, the plaintiff H. W. Ferguson purchased from plaintiff Security National Bank the said original and renewal notes of $12,500 so executed by defendants J. P. Smith and W. D. Kynerd, together with the aforesaid $16,000 vendor lien collateral note attached thereto as collateral to secure same. That plaintiff H. W. Ferguson is now the owner of said notes and of said collateral note hypothecated to secure payment of the said principal note. That on the same day, to wit, the 17th day of June, 1916, plaintiff H. W. Ferguson attached and delivered all of said notes and collateral to plaintiff Security National Bank, to secure a loan obtained by him on said day from said bank, and that plaintiff Security National Bank is thereby the present legal holder of said notes and collateral, which are held by the said Security National Bank of Dallas as pledges to secure the indebtedness of the said Ferguson, which indebtedness is evidenced by the note of H. W. Ferguson, of date September 15, 1916, payable 90 days after date to the order of the Security National Bank of Dallas, in the principal sum of $12,599 with interest at the rate of 8 per cent. per annum from date until paid, and the usual provision for 10 per cent. attorney's fees, if placed in the hands of an attorney for collection; said note payable at the office of the Security National Bank in Dallas, Tex. It is further alleged that the notes executed by the defendants are past due and unpaid, and that defendants, though often requested, have failed and refused to pay said notes, or any part of them; that said notes have been placed in the hands of attorneys; and that plaintiffs have agreed to pay them the fee provided for in said notes, which they say is reasonable. There are other allegations relating to attachments sued out by plaintiffs and their levy upon certain described tracts of land, but it is unnecessary for the purposes of this appeal to quote or state those allegations. Plaintiffs in their amended petition prayed that upon trial they recover of defendants "as the respective interests of plaintiffs may appear against said defendants, the principal interest and attorneys' fees provided for in said note; that the lien held by them against said $16,000 vendor lien note, to secure the payment of notes so due by defendants be foreclosed; and that said collateral note be sold," etc.

In addition to the foregoing judgment prayed for by both plaintiffs, the plaintiff H. W. Ferguson prayed that he recover of defendants the said sums of $167.50 and $269.40 paid by him as interest. To plaintiff's said amended petition the defendant W. D. Kynerd pleaded general and special demurrers, a general denial, and other matters not necessary to state. By trial amendment plaintiffs pleaded: That the note in the principal sum of $12,500 of date on or about February 15, 1916, made by J. P. Smith and W. D. Kynerd, and indorsed on the back thereof by H. W. Ferguson, payable to the order of the Security National Bank, described in the petition of plaintiffs, was never in fact paid or extinguished. That, at the time the said note was indorsed

by the Security National Bank to H. W. Ferguson without recourse, it was distinctly and expressly understood that the note was to be again reindorsed by the said H. W. Ferguson to said Security National Bank, and that the said note was to be in all respects kept alive and an enforceable demand against the parties to the said note. That the said note in the entire transaction was kept alive, and was intended to be kept alive, for the benefit and protection of the rights of the Security National Bank, the payee, in said note. That the note executed by H. W. Ferguson payable to the order of the Security National Bank of date June 17, 1916, was not intended to extinguish the said note signed by Kynerd and Smith as makers, but both of said notes were kept alive for the full protection of the rights of the Security National Bank, the payee, in each of said notes, and it was never at any time intended that there should be a divestiture of title, or interference with the title of the said Security National Bank in the said note executed by Kynerd and Smith for the full protection of its rights under said original note which was never canceled or surrendered, but always held in the custody of the said Security National Bank for its full protection against the makers and other parties thereto, and such was the distinct and explicit understanding of all the parties to the transaction, and no part of the said transaction would have been had except for the said agreement and understanding as to the whole, which said transaction as a whole was the real and true consideration passing between the parties, and prayed as in their amended petition.

In response to plaintiffs' trial amendment, defendant W. D. Kynerd, the plaintiff in error here, pleaded a general demurrer, and specially excepted thereto "because the allegations thereof are contradictory of and repugnant to the allegations of the plaintiffs' second amended original petition filed herein on January 11, 1917." He also pleaded a general denial, etc. His demurrers were overruled, and a trial resulted in favor of the plaintiff Security National Bank against him and J. P. Smith for $14,571.12, and in favor of the plaintiff H. W. Ferguson for $460.40; no recovery being allowed Ferguson on the notes sued on. Plaintiff in error's motion for a new trial was overruled, and he now has the case before this court on writ of error.

The first, second, and third assignments of error relate to and complain of the trial court's action in overruling the plaintiff in error's demurrers. The propositions under the first two of these assignments are to the same effect, namely, that the cause of action of the defendants in error Security National Bank and H. W. Ferguson, if any they had, was not on the note on which they sued, but was on an implied contract or promise of the makers of said note to reimburse the surety; under the third the proposition is that a trial amendment, the allegations whereof are contradictory of and repugnant to the allegations of the petition of which it is made a part, is vulnerable to exception. The counter propositions of the defendants in error are, in substance, first, that according to the allegations of their pleadings the note sued on was not paid and extinguished by the transactions alleged between the bank and Ferguson, but that the holder of said note was entitled to enforce its collection against the makers Smith and Kynerd; that said note was a secured note, the collateral to which could only be realized upon by keeping that note alive for that purpose, and enforcing the same according to its terms, and in this right either Ferguson or the bank would be protected in equity; that, if there had been error in overruling the general demurrer to plaintiff's petition, this was cured by the filing of the trial amendment which amplified the statement of the original cause of action and pleaded fully and specifically the facts in relation to the real transaction between the bank and Ferguson; that, if there had been error in overruling the demurrers to plaintiffs' petition and same had not been cured by plaintiffs' trial amendment, same was rendered harmless by the final disposition of the case which denied any recovery to Ferguson on account of the note of Smith and Kynerd sued on; that the allegations of the trial amendment filed by plaintiffs were not inconsistent with the allegations of plaintiffs' amended petition, and a good cause of action for a recovery on the note sued on was presented by plaintiffs.

[1] We think the propositions asserted by the plaintiff in error are at least substantially correct. From the allegations of the petition it appears, as has been seen, that the note for $12,500 sued on was executed by Smith and Kynerd as makers, indorsed by H. W. Ferguson, and delivered to the Security National Bank, together with a vendor's lien note for $16,000 as collateral security. As between Smith and Kynerd, Ferguson, as indorser, was secondarily liable on said $12,500 note and stood in the position of surety. It further appears from the allegations of the petition that, when said $12,500 note matured, Ferguson as indorser or surety thereon, for a valuable and adequate consideration, purchased it and the $16,000 collateral note from the Security National Bank, and thereby became the owner and holder of said notes. There is no allegation that, at the time or before Ferguson indorsed the $12,500 note and became liable thereon, it was understood and agreed between him and the makers and payee of the note, or either of them, that in the event he paid off and satisfied the note it was to be transferred or assigned to him as the owner thereof with all

the rights of the original payee to sue and recover thereon. It was alleged that on the same day Ferguson purchased the note he obtained from the payee thereof, the Security National Bank, a loan, and that to secure the same he delivered the $12,500 note and the $16,000 collateral note to said bank; that the indebtedness due by Ferguson to the bank by reason of said loan was evidenced by his (Ferguson's) note in the principal sum of $12,599, bearing interest at the rate of 8 per cent. per annum and providing for the payment of the usual attorneys' fees, if placed in the hands of an attorney for collection. As has already been shown, the Security National Bank and H. W. Ferguson by their trial amendment pleaded, in substance, that the note of $12,500 sued on was never in fact paid or extinguished; that at the time the said note was purchased by Ferguson and indorsed by the bank to him without recourse it was distinctly understood that the note was to be again reindorsed by said Ferguson to the bank and kept alive for the benefit and protection of the bank; that the note executed by H. W. Ferguson payable to the order of the Security National Bank of date June 17, 1916 (September 15, 1916), was not intended to extinguish the note signed by Smith and Kynerd, as makers, and indorsed by Ferguson, but that both of said notes were kept alive for the protection of the rights of said bank, and that it was never intended that there should be a divestiture of the title of the said bank in the Smith and Kynerd note; that such was the distinct understanding of the parties, and no part of the transaction would have been had except for the said agreement as to the whole, and yet there is no effort in this suit on the part of the bank to recover against Ferguson as indorser of the note sued on, or otherwise. Our conclusion is that in the state of the pleadings the demurrers of the plaintiff in error should have been sustained.

In the very early case of Holliman v. Rogers, 6 Tex. 91, it was held that payment of a note by a surety extinguishes the note, and the surety has his remedy by suit upon the implied promise or assumpsit, and not by suit upon the note. Subsequent to this decision, contrary rulings seem to have been made by the Supreme Court in several cases, notably Sublett v. McKinney, 19 Tex. 439; but in Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528, the Supreme Court expressly overruled Sublett v. McKinney and adhered to the holding in Holliman v. Rogers, supra. In Faires v. Cockerell will be found a review of the cases in conflict with Holliman v. Rogers and an interesting discussion of the rights and remedies of a co-obligor who pays more than his proportional part, as well as those of a surety who has paid the debt of the principal obligors. It is there distinctly announced that when two or more persons enter into a joint or joint and several obligation, by which they agree to pay a sum of money for another, the law implies a promise from each of such obligors to each of the others that each will indemnify the other in case he pays more of the obligation than his proportional part, and that, if to such obligation there be one or more obligors, the law implies a promise from each of the principal obligors to the surety or to each of the sureties, if there be more than one, that they, the principal obligors, and each of them, will indemnify any surety that pays any part of the obligation; that, if there be more than one surety on such contract, the law likewise implies a promise from each surety to each other surety that, in case he shall discharge the obligation to an extent greater than his share, they will each reimburse him to the extent of the liability of each of them upon said obligation. It is further announced in that case that the promises just stated are raised by the law at the time the contract is made and grow out of the relations of the parties to each other. The Supreme Court further announced that, from a careful examination of the authorities, the conclusion was reached that "when the creditor has no security from either of the payors, and the debt itself holds no lien upon property, nor is for any reason entitled to priority over other debts of the debtor, the payment of the debt by a co-obligor or surety satisfies the original debt, and the party paying has his right of action against the others upon the implied promise raised by law for reimbursement according to their several liabilities," and that "when the creditor in such a contract has a security from the principal obligor, * * * or if the debt itself constitutes a lien upon the property of the debtor, as a vendor's lien, or if from its nature it be entitled to priority in payment of other debts of the debtor, the person paying the debt, not being a volunteer, will be subrogated to the securities, liens, and priorities of the creditor to the extent that he makes payment on the debt; and if it be necessary, from the character of the lien or security, in order to do full justice between the parties, equity will treat the original debt as subsisting, so far as may be necessary to accomplish that end."

The defendants in error cite, among others, the case of Faires v. Cockerell, supra, in support of their proposition that even had H. W. Ferguson paid off in cash to the bank, since the note of Smith and Kynerd was a secured note, the collateral to which could only be realized upon by keeping the original note alive for that purpose and enforcing the same according to its terms, either Ferguson or the bank would be protected in equity in that right. If by their proposition it is intended to be asserted that if equity would treat the note of Smith and Kynerd indorsed by Ferguson, and which was secured by the collateral note of $16,-

000, as subsisting for the purpose of enabling Ferguson and the bank, or either of them, to make available such security it would keep it alive for the purpose of furnishing them a cause of action upon the note and upon which they might sue and recover according to its terms, the proposition is not, in our opinion, sound and is not supported by either of the cases cited. We do not understand that the Supreme Court holds, or intended to hold, in Faires v. Cockerell, that if the creditor, in a contract like the one involved in this suit, has a security from the principal obligor, the surety paying the note is not confined to his right of action upon the implied promise of the principal obligor to reimburse him, but in such case may sue upon the note. It is clearly deducible, if not obvious, from the discussion of the court, that they did not intend to so hold. In Sublett v. McKinney, supra, it was held that the surety is entitled, upon payment of the debt of the principal, not only to have the full benefit of all the collateral securities which the creditor has taken as an additional pledge for his debt, but that he is entitled to be substituted for the creditor as to the very debt itself, and to have it assigned to him; but, as we have hereinbefore stated, that case was expressly overruled by the case of Faires v. Cockerell, and the rule announced in Holliman v. Rogers, supra, adopted and followed.

In Faires v. Cockerell, it is correctly held that the surety can recover from the principal debtor only the amount that he has paid, and therefore, if he has paid only half of the debt, he is only entitled to recover that much, and that he cannot recover that upon the note or contract without other proof, for he must show how much he has paid. Hence it is not true that he is subrogated in that case to the position of the creditor who recovers upon the contract according to its terms without other proof. In the case referred to, he is not subrogated to all the rights of the payee, but only partially so, and the contract must be read as an obligation to pay one-half of its face, when the language expresses a promise to pay the whole sum. It is further said that, if the surety makes different payments on the debt, his right of action accrues upon each payment, and therefore the statute of limitation begins to run against the surety paying at the time of each payment; and illustrative of the error or impracticability of the doctrine that the surety is subrogated to all the rights of the payee, and his cause of action is upon the note signed by him as surety, it is pointed out that, if he has made different payments and his cause of action is upon the note, he has upon the same note as many periods of limitation as he has made payments, and that, if the surety makes payment of the whole debt the last day before the note would be barred by limitation, he would have four years from that date to sue upon the note; and it

would run in such case for eight years, instead of four, as prescribed by the statute. The error of the opinion that the surety is subrogated to the debt, says Mr. Story, in his work on Equity Jurisprudence (section 499c), which is approved in Faires v. Cockerell, "seems to have arisen from confounding the right of the surety on payment of the debt to be substituted for the creditor, and to have an assignment of any independent collateral securities, with the supposed right to have the original debt assigned." It is also remarked in Faires v. Cockerell that it has been held by our court and others that, where one is subrogated to the securities held by the creditor, he is not entitled to recover the rate of interest expressed in the judgment or note which is the evidence of the debt; and such holding furnishes additional reason for the conclusion that in no event is the surety, who pays his principal's debt, subrogated to the the debt itself and all the rights of the principal to enforce the note or contract evidencing the debt according to its terms.

In the case of McCavick v. McBride, 189 S. W. 795, it was asserted that it appeared from the evidence in that case, without contradiction, that the appellee did not satisfy or extinguish the debt, but, as is alleged in the present case, purchased the note therein sued on from the bank and thereby became in law the owner of the note and entitled to all the rights and remedies against the appellant that the bank had when it acquired the note; but this court under the authority of the Faires Case, held that, by the payment of the original debt and the supposed acquisition of the note thereby as purchaser by the appellee McBride, the note was extinguished and McBride's remedy was upon the implied promise to reimburse him and not upon the note. In the case at bar, the security held by the payors of the note sued on was the $16,000 note delivered to them as collateral, and was a separate transaction complete within itself. Clearly it was not necessary, it occurs to us, from the character of such security, in order for Ferguson to make it available in enforcing the implied promise of Smith and Kynerd to reimburse him for the payment or purchase of the $12,500 note indorsed by him, that said note should be kept alive. When he paid off and discharged as surety the said $12,500 note, equity subrogated him to the $16,000 note as collateral to the implied promise, and it was not essential, in order to do full justice between the parties, that the original debt be treated as subsisting. The fact therefore of the existence of the $16,000 note does not operate to render inapplicable the principle announced in Faires v. Cockerell and McCavick v. McBride, supra.

[2] Under the authorities we are constrained to hold that the right of action of Ferguson in this case, according to his pleadings,

was upon the implied promise arising out of the relation of the parties, and not upon the note upon which he and his coplaintiff, the Security National Bank, sued. The trial amendment filed by the defendants in error does not, in our opinion, alter the case. The allegations of that amendment, to the effect that it was not intended to extinguish the note sued on, but that the intention was at the time of the alleged purchase of the note by Ferguson from the bank to keep it alive for the benefit and protection of the rights of the bank, etc., were ineffectual to show such intention and understanding. This is true for the reason that the allegations of the trial amendment of defendants in error were contradictory of and repugnant to the distinctly alleged fact in the amended petition, of which the said trial amendment was a part; that Ferguson did "for a valuable and adequate consideration purchase the note; that the bank indorsed it to him; and that he became the owner thereof." Having, according to these allegations, purchased and paid off the note, the legal consequences resulting therefrom are that the note was extinguished, and no suit could thereafter be maintained upon it, and that the only remedy of Ferguson, the surety, or the bank, if it had any remedy at all against the makers of said note, was upon the implied promise. The allegations of the trial amendment were doubtless ineffectual to keep the note sued on alive and furnish the defendants in error a cause of action upon it, for the additional reason that the implied promise on the part of the principal obligors in the note to reimburse the surety in the event he paid the note was raised by the law at the time the contract of suretyship was made, and there is no allegation that this legal obligation, by an understanding of all the parties to the transaction at that time, was set aside or limited, and that, in the event Ferguson paid off the note or became the purchaser thereof, the note should be assigned to him with all the rights of the original payee to sue thereon and enforce it according to its terms. The allegations are, as we understand them, to the effect that it was the understanding and intention of H. W. Ferguson and the Security National Bank, at the time it is alleged that Ferguson purchased the note sued on, and that of Smith and Kynerd, the principal obligors, that the note should not be extinguished, but assigned to Ferguson as the owner thereof, and kept alive for the protection of the bank, etc. The status and legal rights of the parties, as we understand the law, were fixed at the time the note was executed and indorsed by H. W. Ferguson, and that no agreement or intention of Ferguson, the surety, and the bank, the payee, at the time surety purchased the note and paid it off, could change those rights or the legal consequences which would otherwise result from such purchase and payment. The consideration paid by Ferguson for the note in suit is not specifically alleged. The allegation is simply that—

"For a valuable and adequate consideration he (Ferguson) purchased from plaintiff Security National Bank the said original and renewal notes of $12,500," etc.

The statement made by defendants in error in their brief, that "the petition of plaintiff shows upon its face that the only act done by H. W. Ferguson in connection with an adjustment of the note declared upon was to execute his own note to the bank, which note of Ferguson had not been paid and was past due at the time of the trial of the case in the court below," does not seem to be borne out by the record before us. It is alleged, in effect, that on the same day Ferguson purchased the note sued on he secured a loan from the bank of $12,599, and executed his note therefor, and that he delivered the $12,500 note made by Smith and Kynerd and indorsed by him, and which he purchased from the bank, together with the $16,000 collateral note, to the bank to secure the payment of his said note for $12,599 executed for the loan he had obtained; but nowhere is it expressly averred that the $12,599 note was executed and delivered to take up the note sued on. On the contrary, it is alleged that the $12,599 note was executed by Ferguson for the loan he had obtained from the bank. But if it is a warranted inference from the alleged practically contemporaneous transactions that the note of $12,599 mentioned was the consideration for the alleged purchase of the note sued on, or whatever may have been the consideration for the purchase by Ferguson of the note indorsed by him and sued on in this action, it is manifest from the pleadings that the bank was satisfied with it, and indorsed without recourse and delivered to Ferguson the $12,500 note. The allegations of the amended petition show that Ferguson for a valuable and adequate consideration purchased the note, and it appears from the trial amendment of the defendants in error that "said note was indorsed by the Security National Bank to H. W. Ferguson without recourse." The allegations show that the bank was satisfied, and that the debt due it by Smith and Kynerd as principal obligors and Ferguson as surety was discharged. This being true, neither Ferguson nor the bank had any cause of action upon it. It seems that the implied promise of Smith and Kynerd to reimburse Ferguson for paying off the note is not the subject of assignment (Holliman v. Rogers, supra); but, if it is, there is no allegation of such assignment. The only theory upon which the bank sought to recover was that the note sued on had not been extinguished. So that if it should be conceded that Ferguson's cause of action was subject to assignment, yet in this state of the pleadings, since we hold that the note

was extinguished by the purchase and payment of Ferguson, it does not appear that the bank would have any right of recovery whatever upon the implied promise.

[3] The substance of the fourth and last assignment of error is that the trial court erred in rendering judgment in favor of the plaintiff H. W. Ferguson for $406.40, because that court was without jurisdiction of said amount. Ferguson claimed, as we have shown, that when the $12,500 note indorsed by him matured he was compelled to pay the interest demanded in order to secure an extension, amounting to $167.50, and in addition thereto was compelled to pay on an installment of interest which had matured on the collateral note of $16,000, $269.40, to preserve that security, and prayed separately for judgment in his favor for the aggregate of these two amounts. Ferguson having no right of action on the note sued on, and the amount of the interest alleged to have been paid being less than $500, we think this assignment is well taken.

The note sued on having been paid off and extinguished, and the allegations of the trial amendment not alleging facts showing a cause of action in either of the defendants in error on the note sued on, but the facts alleged in said trial amendment being contradictory and repugnant to the allegations of the petition, of which it is made a part, the whole petition was obnoxious to the demurrers urged by plaintiff in error, and said demurrers should have been sustained. Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; McCavick v. McBride, 189 S. W. 795; Rowe v. Horton, 65 Tex. 89; Barry v. Screwmen's Ass'n, 67 Tex. 250, 3 S. W. 261; Steinback v. City of Galveston, 41 S. W. 823.

It follows from the conclusions reached that it is our duty to reverse the judgment of the district court, and as, in our opinion, the case should have been disposed of on plaintiff in error's demurrers, with the right of defendants in error to amend, the case will be remanded.

Judgment reversed, and cause remanded.